UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Everett H. Sumner and
Karen K. Sumner,

    Debtors.
_____/

Case No. 10-78091
Chapter 13
Hon. Walter Shapero

Everett H. Sumner and
Karen K. Sumner,

    Plaintiffs,

v.

J.P. Morgan Chase Bank, N.A.,

    Defendant.
_____/

Adv. Pro. No. 10-07611

## OPINION REGARDING VALUE OF REAL PROPERTY

The matter before the Court is Debtors' Complaint requesting a determination of the extent of the lien of Defendant J.P. Morgan Chase Bank, N.A. ("J.P. Morgan").

### I. BACKGROUND

Everett and Karen Sumner ("Debtors") filed their joint Chapter 13 petition on December 22, 2010. As part of their proposed Chapter 13 plan, Debtors will retain their residence located at 17163 Country Club Drive, Livonia, Michigan 48152 (the "Property"). Per the stipulated facts in the Joint Final Pre-Trial Order (Docket No. 16), the Property is encumbered by two mortgages: a first mortgage held by CitiMortgage, Inc. in the amount of $160,510.51 as of the petition date (as stipulated to in the Joint Final Pre-Trial Order) and a second mortgage held by J.P. Morgan in the amount of $109,710.57 as of the petition date.

Contending that J.P. Morgan's mortgage is completely unsecured, Debtors filed this adversary proceeding seeking to treat the second mortgage as an unsecured debt under the plan,

1

i.e., to "strip it" from the Property. A trial on the matter was held, the parties submitted post-trial briefs, and the matter was taken under advisement.

The parties' exhibits include two appraisals, one presented by the Debtors and the other presented by J.P. Morgan. The Court reviewed the appraisals relied on by each party as well as the trial testimony of Debtor, Everett Sumner, Debtors' appraiser: Scott Gailey, and J.P. Morgan's appraiser: William Steinke. Mr. Gailey's appraisal valued the Property at $155,000 as of June 9, 2011, which is $5,510.51 lower than the amount owed on the first mortgage as of the petition date. In contrast, Mr. Steinke's appraisal valued the Property at $162,000 as of June 22, 2011, which is $1,489.49 more than the amount owed on the first mortgage as of the petition date.

## II. DISCUSSION

The three issues to be decided are (1) which date is the proper date for determining the amount owed on the first mortgage, (2) which date is the proper date for determining the value of the Property, and (3) whether J.P. Morgan's mortgage is wholly unsecured.

### A. Date for Determining Amount Owed on First Mortgage

At the trial, for the first time, Debtors raised the argument that amount owed on the first mortgage should be determined as of the date of the trial, as opposed to the petition date (or some other date). In Joint Final Pre-Trial Order, the parties stipulated that the only issue of fact to be litigated was "the fair market value of the property." (Joint Final Pre-Trial Order, Docket No. 16, p. 2).

The only evidence directly relating to the amount owed on the first mortgage as of the trial date came from Mr. Sumner, who testified that he did not know the balance owed on the first mortgage as of that time. He also testified that he had not made any payments to CitiMortgage, Inc. since the petition date and that he wasn't sure what his monthly mortgage payment was, but that he thinks it was between $1,500 and $1,600 per month. As of the trial date, Mr. Sumner testified that he had missed approximately nine months of mortgage payments. Mr. Sumner further testified that he and his wife are 100% current on their payments to the Chapter 13 Trustee (which include amounts that would be disbursed to CitiMortgage, Inc. for payments on their first mortgage upon confirmation of their plan).

In their closing arguments and in their post-trial brief, Debtors argued that the Court should consider the date of trial as the proper date for determining the amount owed on the first

2

mortgage, and that if it does so, taking into consideration the above referred to testimony, the amount owed on the first mortgage as of the trial date would be approximately $174,000 ($160,510.51 plus approximately $14,000 for the nine months of missed total monthly mortgage payments since the petition date). Debtors argue that, based on the valuation testimony of both Mr. Gailey and Mr. Steinke, the first mortgage balance so figured exceeds the value of the Property, causing J.P. Morgan's mortgage to be wholly unsecured under any view. It should be noted with regard to that argument that it is, of course, not true as a matter of theory that when one stops paying required monthly principal and interest on an obligation, the principal balance owed on that obligation thereafter increased monthly by the total of the monthly amounts not being paid. The balance owed on the debt at the time that payment ceases may indeed increase by reason of further accruing unpaid interest, but the amount of such, even at a penalty interest rate, is most likely less than the total non-default monthly prescribed normal principal and interest payment. Therefore, Debtors' indicated calculation of the likely balance owed at the time of the trial and after non-payment for a number of months is somewhat flawed. It also fails to consider the effect of any payments actually made post-filing to the Trustee for later distribution to the Creditor, which payments which would apply to that obligation.

In its post-hearing brief, J.P. Morgan argues that Debtors should have raised its indicated stated argument in the Final Pre-Trial Order and that the argument should be stricken for failure to do so. In the alternative, J.P. Morgan argues that, regardless, the petition date is the proper date to use in determining the amount owed on the first mortgage.

11 U.S.C. § 506(a) provides, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. The allowed amount of a secured claim is determined by 11 U.S.C. § 502(a), which states "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Section 502(b) states: "if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . *as of the date of the filing of the petition.*" 11 U.S.C. § 502(b) (emphasis added).

So, the question here is: what is the proper date for determining the balance owed on a first mortgage in a second mortgage lien-strip case? If, as noted, the amount of a claim for

allowance purposes is fixed as of the filing date, and as is hereinafter concluded, the filing date is also the proper date to value the property in a lien strip case, it is clearly consistent and otherwise makes sense the that filing date should also be the date for determining the balance owed on the first mortgage.  Were it otherwise, there would be the need for calculation and recalculation of such balances on an ongoing basis and having to account or take into consideration the effect of monies actually being paid by the Debtor on account of that debt to a Chapter 13 Trustee (a fact which is actually true in this case) and prior to the distribution of same to either the creditor, if the plan is confirmed, or to the debtor, if it is not.  All of this is in the context of varying possibly default interest rates, which might affect calculation of the balances, as well as the Chapter 13 realities of moving targets of a plan confirmation date and a lien strip trial date, which likewise would also affect the balance considerations.  The case filing date is a seminal point and concept in bankruptcy cases and no exception should be made in this situation.

In this particular case, there is the added reason that Debtor's argument that the date for determining the amount owed on the first mortgage should be other than the petition date was not raised in the Joint Final Pre-Trial Order, which not only stated the mortgage balance at the petition date, but also indicated that the only issue for adjudication was the value of the property.

### B.  Date for Determining the Value of the Property

The parties also disagree regarding the date that the Property should be valued for purposes of determining whether J.P. Morgan's mortgage is wholly unsecured.  Debtors argue that the proper valuation date should be the date of the trial, July, 17, 2011; because that is the date they argue the amount of the first mortgage should be determined, which would allow the Court to compare "apples to apples." J.P. Morgan argues that the proper date should be the petition date, December 22, 2010. As noted above, the effective date of the appraisals that were submitted into evidence were June 9, 2011 and June 22, 2011.  As above noted, the Court concludes that the proper date for determining the amount owed on the first mortgage was the petition date.  "Courts have not reached a consensus on the proper valuation date of property when a debtor attempts to strip off a wholly unsecured lien." *Dean v. LaPlaya Invs., Inc. (In re Dean),* 319 B.R. 474, 477 (Bankr. E.D. Va. 2004). This Court concludes that the proper date for determining the value of the Property is the petition date.  *See Dean*, 319 B.R. 474, 476-78 (the line of cases that has "settled on the bankruptcy petition date as the proper date to value a

debtor's property in the context of lien stripping ... is most persuasive"); *W. Interstate Bancorp v. Edwards (In re Edwards),* 245 B.R. 917, 919 (Bankr. S.D. Ga. 2000) (holding that, in determining whether junior mortgage holder's lien was subject to strip-off, "the value of the [r]esidence is determined as of the commencement of the bankruptcy case"); *In re Sanders,* 202 B.R. 986, 987 (Bankr. D. Neb. 1996) (relying on the value of the debtors' property at the petition date in determining that the creditor is wholly unsecured).

C. <u>Whether J.P. Morgan's Mortgage is Wholly Unsecured</u>

If J.P Morgan's mortgage is wholly unsecured, then it is not subject to the anti-modification protection of 11 U.S.C. § 1322(b)(2). *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663, 665 (6th Cir. 2002). To decide this particular issue, the Court does not need to determine the actual value of the Property; rather, it need only determine whether the value of the Property, as of December 22, 2010, was greater than $160,510.51, the amount of the first mortgage.

Pursuant to the Supreme Court's decision in *Assocs. Commer. Corp. v. Rash*, the appropriate valuation is the "replacement value," that is, "the cost the debtor would incur to obtain a like asset for the same 'proposed…use.'" 520 U.S. 953, 965 (1997). In this case, that would be a consumer purchasing a home as a personal residence, so "retail" or "fair market value," keeping in mind that *Rash* involved a vehicle, the value of which likely did not vary with its location, unlike real estate.

While the Court found both appraisers to be of relatively equal credibility based a review of their testimony, a review of the evidence leads the Court to conclude that Debtors' have met their burden of proving that the Property was worth less than $160,510.51.

In this case, both appraisers personally inspected the Property and used the sales comparison approach in coming to their respective conclusion regarding the value of the Property. As noted, the two appraisals only differed by only $7,000. Both appraisers testified that the Property conforms to its neighborhood in layout and function, and it has certain upgrades, including a five-year-old roof, central air conditioning, a newer furnace, Anderson casement windows, first floor laundry, and a tank-less water heater. Both appraisers considered three of the same comparable properties in their reports: 16805 Wayne Road, 35881 Bobrich, and 18336 Levan. In addition to those three properties, Mr. Gailey considered 17688 Fairway Street and

5

Mr. Steinke considered 17464 Francavilla (a distressed bank sale property) and 36709 Gardner. The two appraisals differed in opinion mainly in that (1) Mr. Gailey considered the basement to be only partially finished and made an adjustment of $2,000 when comparing with unfinished basements, whereas Mr. Steinke considered the basement to be fully finished and made an adjustment of $3,000 when comparing with unfinished basements; (2) Mr. Gailey indicated that the kitchen and bathrooms required updating, whereas Mr. Steinke indicated that the kitchen has been remodeled once since the house was built in 1968; and (3) Mr. Gailey indicated that certain of the above referred to upgrades are generally consistent with the houses in the Property's neighborhood and he did not make many adjustments for those upgraded items, whereas Mr. Steinke made a few adjustments for the upgraded items.

After reviewing the appraisals and the appraisers' testimony, the Court concludes that the Property is worth less than $160,510.51. The differences in the two appraisals were clearly due to subjective differences in opinion, mainly with regard to the level of finish in the basement and with regard to the impact of those certain upgrades on the overall value of the Property. Based on a review of the appraisals, it appears that all of the comparable properties used by Mr. Steinke had either Anderson windows or certain replacement windows. Mr. Steinke did not make any adjustments with regard to the windows, and it is clear that those upgraded windows are consistent within the Property's neighborhood. Further, it is clear based on the limited adjustments made by Mr. Steinke with regard to the upgraded features, such as the tank-less water heater and the newer furnace, that those features are also somewhat consistent within the Property's neighborhood. The Court also finds that, although the kitchen at the Property had been renovated at some point after it was built, as indicated by Mr. Gailey, the kitchen and bathrooms are still likely in need of updating, which is a significant factor in determining the value of the Property. The Court concludes that too much emphasis was placed on certain upgrades by J.P. Morgan, such as the Anderson windows and the tank-less water heater, and that those items are unlikely to have a high level of return. For those reasons, the Court finds that the value of the Property is less than $160,510.51.

It should also be noted that, in making its decision, the Court took into consideration the fact that the appraisals were done in June 2011, six months prior to the appropriate valuation date, i.e.: the petition date of December 22, 2010. Both appraisers testified that there had been some decline in the market between December and the trial date. Mr. Steinke included a 6%

adjustment and Mr. Gailey included a 3% adjustment for the time adjustments in their appraisals. Even taking into account the decline in value over the six months between the petition date and the effective dates of the appraisals, the Court still concludes that the value of the Property is less than the amount owed on the first mortgage ($160,510.51), and therefore, that judgment should be granted in favor of the Debtors. Debtors shall submit an appropriate order.

.

```
Signed on January 06, 2012
                /s/ Walter Shapero
            Walter Shapero
            United States Bankruptcy Judge
```